**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | | |
|---|---|---|
| SHIEL SEXTON COMPANY, INC., | ) | CAUSE/CASE NO.  1:17-CV-2204 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| HANOVER INSURANCE COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

## COMPLAINT

Plaintiff, Shiel Sexton Company, Inc. ("Shiel Sexton"), by counsel, for its Complaint against Hanover Insurance Company ("Hanover"), states as follows:

## PARTIES, JURISDICTION AND VENUE

1.      Shiel Sexton is a corporation organized under the laws of the State of Indiana with its principal place of business in Indianapolis, Indiana and, as such, is a citizen of the State of Indiana.

2.      Hanover is a corporation organized under the laws of New Hampshire with its principal place of business in Worcester, Massachusetts and, as such, is a citizen of both the State of New Hampshire and the Commonwealth of Massachusetts.

3.      Hanover is licensed to sell insurance in the State of Indiana.

4.      This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a) because complete diversity of citizenship exists between Shiel Sexton and Hanover and the amount in controversy exceeds $75,000.00, excluding any interest and costs.

5.      Subject matter jurisdiction is further vested in this court pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. §2201.  A real and justiciable controversy exists between

the parties with respect to whether Shiel Sexton is entitled to coverage under the insurance policy issued by Hanover for any or all of the claims and/or damages incurred or to be incurred by Shiel Sexton.  Declaratory relief will effectively adjudicate the rights and obligations of the parties.

6.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial portion of the events giving rise to the claim for declaratory judgment and breach of the insurance policy occurred in this District.

## **BACKGROUND**

7.     On or about May 17, 2016, Shiel Sexton entered into an agreement ("Construction Contract") with I-70 West, LLC ("Owner") for the construction of a warehouse located at Innovation Boulevard, Clayton, Hendricks County, Indiana known as the Sunbeam Two at 70 West Commerce Park project ("Project").

8.     A true and accurate copy of the Construction Contract and General Conditions of the Contract for Construction ("General Conditions") are attached hereto as **Exhibit 1**.

9.     The Project included the construction of a 602,000-square foot building ("Building").

10.     Shiel Sexton was obligated to "purchase and maintain…property insurance written on a builder's risk "all-risk" or equivalent policy form" pursuant to §11.3.1 of the General Conditions.

11.     Shiel Sexton purchased Commercial Inland Marine Coverage insurance from Hanover, Policy Number IHW A964266 00, with a policy period of July 1, 2016 through July 1, 2017 ("Builder's Risk Policy") in satisfaction of this requirement.

12.     A true and accurate copy of the Builder's Risk Policy is attached hereto as **Exhibit 2**.

13.     The Owner purchased a Commercial Property Policy from American Home Assurance Company, Policy Number 060506442, with a policy period of January 1, 2017 through January 1, 2018 ("Property Policy").

14.     On May 11, 2017, the northeast corner of the Building collapsed following a local storm event ("Loss").

15.     As of the date of the Loss, the Project had not been "accepted" by the Owner.

16.     Hanover was provided a copy of the Construction Contract and General Conditions.

17.     On June 8, 2017, Hanover confirmed that the Loss was covered under the Builder's Risk Policy.

18.     On June 16, 2017, Hanover issued a letter questioning coverage for the Loss under the Builder's Risk Policy and reserving its rights to deny coverage ("ROR Letter").

19.     A true and accurate copy of Hanover's ROR Letter is attached hereto as **Exhibit 3**.

20.     Despite its earlier acknowledgement that the Loss was covered, Hanover contends that the Builder's Risk Policy ceased covering the Project as it was "accepted" by the Owner.

21.     Hanover further contends that, to the extent the Loss is covered under the Builder's Risk Policy, the "other insurance" clause contained therein makes the Builder's Risk Policy "excess" to the coverage under the Property Policy.

22.     The costs and damages to repair the Building could exceed $1,500,000.

## THE BUILDER'S RISK POLICY

23.     Shiel Sexton is the "Named Insured" under the Builder's Risk Policy.

24.     The Declarations of the Builder's Risk Policy identifies other parties related to Shiel Sexton as "Named Insureds."

25.     The Owner is not one of the other parties identified as a "Named Insured" on the Declarations of the Builder's Risk Policy.

26.     The Builder's Risk Policy provides that "the words 'you' and 'yours' refer to the Named Insured shown on the Declarations."

27.     The Owner is not a "Named Insured" under the Builder's Risk Policy and, as such, any references to "you" or "yours" in the Builder's Risk Policy do not refer to the Owner.

28.     The Builder's Risk Policy provides:

**Loss Conditions**

F. Other Insurance

1.      You may have other insurance subject to the same plan, terms, conditions and provisions as the insurance under this Coverage Part.  If you do, we will pay our share of the covered loss or damage.  Our share is the proportion that the applicable Limit of Insurance under this Coverage Part bears to the Limits of Insurance of all insurance covering the same basis.

2.      If there is other insurance covering the same loss or damage, other than that described in **1.** above, we will pay only for the amount of covered loss or damage in excess of the amount due from that other insurance, whether you can collect on it or not.  But we will not pay more than the applicable Limit of Insurance.

29.     The "Other Insurance" clause in the Builder's Risk Policy is only applicable when there is "other insurance" that "you," the Named Insured, has available to pay for the covered loss or damage.

30.     Shiel Sexton does not have "other insurance" available to pay for the Loss.

31.     The Builder's Risk Policy further provides:

**3. When Coverage Ends**

The coverage provided for Covered Property will end when one of the following first occurs:

    **a.**  This policy expires or is cancelled;
    **b.**  The "building and structure" is accepted by the purchaser or owner under the contract of construction even if the owner or purchaser is an insured under this Policy;
    **c.**  Your interest in the "building or structure" ceases;
    **d.**  You abandon construction with no intent to complete it;
    **e.**  Ninety (90) days after construction on the project is complete;

32.     The Builder's Risk Policy defines "Building and Structures" as "structures which are meant to be permanent structures…[and] appurtenant permeant structures including sidewalks, walkways, driveways, roadways and their related fixtures provided such work is included within the contract of construction and if the values are included within the completed value."

33.     In its ROR Letter, Hanover contends that the "building and structures" for the Project were "accepted" by the Owner.

34.     However, the "building and structures" of the Project were not "accepted" by the Owner "under the contract of construction."

35.     The General Conditions to the Construction Contract require the following events to occur before the Owner's "acceptance" of the Project, including "acceptance" of the "building and structures":

    A.  § 9.10.1 – Upon receipt of the Contractor's written notice that the Work is ready for final inspection and acceptance and upon receipt of a final Application for Payment, the Architect will promptly make such inspection.

    B.  § 9.10.1 – [W]hen the Architect finds the Work acceptable under the Contract Documents and the Contract fully performed, the Architect will promptly issue a final Certificate for Payment stating that to the best of the Architect's

knowledge, information and belief, and on the basis of the Architect's on-site visits and inspections, the Work has been completed in accordance with the terms and conditions of the Contract Documents and that the entire balance found to be due the Contractor and noted in the final Certificate is due and payable.

C. § 9.10.1 – The Architect's final Certificate of Payment will constitute a further representation that conditions listed in Section 9.10.2 as precedent to Contractor's being entitled to final payment have been fulfilled.

D. § 9.10.2 – Contractor submits to the Architect:

1) an affidavit that payrolls, bills for materials and equipment, and other indebtedness connected with the Work for which the Owner or the Owner's property might be responsible or encumbered (less amounts withheld by Owner) have been paid or otherwise satisfied;

2) a certificate evidencing that insurance required by the Contract Documents to remain in force after final payment is currently in effect and will not be canceled or allowed to expire until at least 30 days' prior written notice has been given to the Owner;

3) a written statement that the Contractor knows of no substantial reason that the insurance will not be renewable to cover the period required by the Contract Documents;

4) consent of surety, if any, to final payment; and

5) if required by the Owner, other data establishing payment or satisfaction of obligations, such as receipts, releases and waivers of liens, claims, security interests or encumbrances arising out of the Contract, to the extent and in such form as may be designated by the owner.

36.    As of the date of the Loss, Shiel Sexton had not received a Certificate of Substantial Completion from the Architect pursuant to § 9.8.5 of the General Conditions.

37.    As of the date of the Loss, Shiel Sexton had not completed its "punchlist" work pursuant to § 9.8.3 of the General Conditions.

38.    As of the date of the Loss, Shiel Sexton had not submitted a "written notice that the Work is ready for final inspection and acceptance."

39.     As of the date of the Loss, Shiel Sexton had not provided a final Application for Payment to either the Owner or Architect.

40.     As of the date of the Loss, the Architect had not made a final inspection.

41.     As of the date of the Loss, the Architect had not made a finding that the Work, which includes the "buildings and structures," was acceptable under the Contract Documents and the Contract fully performed.

42.     As of the date of the Loss, the Architect had not issued a final Certificate for Payment.

43.     As of the date of the Loss, Shiel Sexton had not provided an affidavit that all indebtedness connected with the Work, including the "building and structures," had been paid or otherwise satisfied.

44.     As of the date of the Loss, Shiel Sexton had not provided a final waiver of lien, as required by the Owner.

45.     As of the date of the Loss, Hendricks County had not issued a Certificate of Completion.

## COUNT I – DECLARATORY JUDGMENT

46.     Shiel Sexton incorporates by reference the allegations set forth in rhetorical paragraphs 1 through 45 as if fully stated herein.

47.     The Project, including the "buildings and structures," was not "accepted" by the Owner in accordance with the Construction Contract and General Conditions.

48.     The Loss is a covered loss under the Builder's Risk Policy.

49.     Shiel Sexton does not have any "other insurance" available to pay for the Loss.

50.     Shiel Sexton is entitled to recover the full amount of the covered costs and damages associated with the Loss under the Builder's Risk Policy.

WHEREFORE, Shiel Sexton respectfully demands a Declaratory Judgment declaring that the Builder's Risk Policy provides insurance coverage for the full amount of covered costs and damages associated with the Loss, that the Builder's Risk Policy is not "excess" to the Property Policy, for costs of this action, and for all other relief this Court deems appropriate.

## COUNT II – BREACH OF THE BUILDER'S RISK POLICY

51.     Shiel Sexton incorporates by reference the allegations set forth in rhetorical paragraphs 1 through 50 as if fully stated herein.

52.     The Builder's Risk Policy is a valid and enforceable contract between Shiel Sexton and Hanover.

53.     Hanover is obligated to perform its duties under the Builder's Risk Policy, including but not limited paying for covered costs and damages arising from the Loss.

54.     Hanover is in breach of its duties under the Builder's Risk Policy by failing to accept responsibility for the covered costs and damages arising from the Loss within a reasonable time.

55.     Shiel Sexton has been damaged and continues to be damaged as a direct and proximate result of Hanover's breaches of the Builder's Risk Policy.

56.     Shiel Sexton has suffered consequential damages as a result of Hanover's breach of the Builder's Risk Policy.

WHEREFORE, Shiel Sexton respectfully demands judgment be entered against Hanover for breach of the Builder's Risk Policy in an amount to be proven at trial, including but not

limited to all consequential, incidental, and compensatory damages arising therefrom, for costs of this action, and for all other relief this Court deems appropriate.

FROST BROWN TODD LLC

By: */s/ Daniel P. King*
Terrence L. Brookie, # 3874-49
Daniel P. King, #23025-49

*Attorneys for Plaintiff Shiel Sexton Company, Inc.*

0122682.0649459  4820-5168-0330v1

9